USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _2/24/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHALPIN REALTY SC, LLC,

                              Petitioner,

            -against-

MARCUS & MILLICHAP REAL ESTATE
INVESTMENT SERVICES, INC.,

                              Respondent.

24-CV-4105 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Petitioner Chalpin Realty SC, LLC ("Chalpin") initiated this action against Marcus &

Millichap Real Estate Investment Services, Inc. ("M&M") to partially vacate a final arbitration

award that was in favor of M&M. *See* Dkt. 1 ("Petition"). M&M cross-moved to dismiss the

Petition on several grounds, including that Chalpin's Petition is barred by the doctrine of res

judicata and that Chalpin failed to serve its Petition by the statutorily-prescribed deadline. For

the following reasons, M&M's motion to dismiss the Petition is GRANTED.

## BACKGROUND

In 2019, Chalpin hired M&M as its agent and investment advisor in connection with a

like-kind real estate transaction.[1] Declaration of Scott M. Himes in Support of Petition and

Motion to Vacate in Part Final Arbitration Award, Dkt 3-1 ("Himes Decl."), ¶ 12. Chalpin sought

M&M's assistance in acquiring real property as the "second prong" of a like-kind exchange. *Id.*

M&M identified a commercial property in South Carolina known as "TheBLVD" as suitable and

advised Chalpin to acquire the property. *Id.* ¶ 13. The transaction closed in 2019; according to

---

[1] Under the tax code, if proceeds realized from the sale of real estate are invested in other real estate, the
seller is able to defer capital gains taxes on the initial sale. *See* Himes Decl. ¶ 12.

Chalpin, it was unaware that M&M also represented the seller of TheBLVD (the "Seller"). *Id.*[2] The value of TheBLVD quickly cratered, and Chalpin lost almost all of its equity. *Id.* ¶ 14.

On September 22, 2020, Chalpin sued M&M and others in South Carolina state court in *Chalpin Realty SC, LLC v. Marino, et al.* (the "South Carolina Action"). Declaration in Support of Respondent's Motion to Dismiss Petition and Response to Petitioner's Memorandum of Law, Dkt. 31 ("Respondent Decl."), ¶ 6; *see also* Himes Decl., Ex. 1, at 44–103 ("South Carolina Compl."). Chalpin alleged that M&M breached its contract with Chalpin, defrauded Chalpin, and fraudulently induced it to purchase TheBLVD when it served as a dual agent without Chalpin's consent. South Carolina Compl. ¶¶ 60–116, 158–62, 180(c)-(f), 199, 202–15. M&M and its agent and co-defendant Judson Kauffman successfully moved to compel arbitration. Respondent Decl. ¶ 6. On March 4, 2024, the arbitrator found that M&M was Chalpin's fiduciary and had served as an unconsented-to dual agent, but he dismissed Chalpin's breach of fiduciary duty claim finding that it knew or should have known that M&M was a dual agent. *Id.* ¶ 22; Petition ¶¶ 4–5.

On March 12, 2024, pursuant to a stipulation of the parties, Chalpin dismissed the South Carolina Action "with prejudice" as to M&M and Kauffman. Respondent Decl. ¶ 26; Respondent Decl., Ex. 21 ("Stipulation"). On May 29, 2024, Chalpin initiated this action to partially vacate the arbitration award, *see* Dkt. 1, and served M&M on June 10, 2024, *see* Dkt. 7. M&M cross-moved to dismiss the Petition on various grounds. *See* Dkt. 30.

---

[2]       Although the parties seem to agree that M&M did not disclose in writing to Chalpin that it also represented the Seller in the transaction, the arbitrator found several circumstances that put Chalpin on notice that M&M represented the Seller. Respondent Mem., Dkt. 30, at 20.

**DISCUSSION**

### I.    Law Applicable to M&M's Motion to Dismiss

District courts are required to treat a petition to vacate an arbitration award "as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006); *accord Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 28 (S.D.N.Y. 2017). M&M has not supplied, nor has the Court found, precedent in this Circuit articulating the standard that applies when the respondent cross-moves to dismiss such a petition. It stands to reason, given M&M's inclusion of extrinsic documents, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (converting motion to dismiss to motion for summary judgment when the movant presents matters outside the pleadings), and the requirement that the Court treat the Petition like a motion for summary judgment, *Gottdiener*, 462 F.3d at 109, that the Court should assess M&M's cross-motion to dismiss as it would a cross-motion for summary judgment. M&M, therefore, bears the "burden of showing that no genuine factual dispute exists," and "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of" Chalpin. *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005) (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Although the Federal Arbitration Act ("FAA") creates a "body of federal substantive law" governing arbitration that has "substantive supremacy" over state arbitration law, *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (citations omitted), it does not confer on federal courts jurisdiction to decide a petition to vacate an arbitration award; rather, a court must have an "independent jurisdictional basis" to resolve such a petition, *Badgerow v. Walters*, 596 U.S. 1, 4 (2022) (citation omitted). The Petition asserts that the Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1332.  Petition ¶¶ 15–18.  Because it has long been established that federal courts sitting in diversity "apply the substantive law of the forum State on outcome determinative issues," *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018) (citation omitted), the Court looks to New York law in interpreting the parties' agreement and its effect on the law that applies to M&M's motion to dismiss.

"New York arbitration law applies in cases otherwise governed by the FAA" if the parties' contract provides that New York law governs "both the agreement *and* its enforcement;" otherwise, the FAA's default rules apply.  *Park Lane IBS, LLC v. Unbnd Grp. Pty Ltd.*, No. 23-CV-8620 (PKC), 2024 WL 4123515, at *3 (S.D.N.Y. Sept. 9, 2024) (citation omitted) (emphasis added); *accord Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp.*, 4 N.Y.3d 247, 253 (2005).  The choice-of-law provision in the contract between Chalpin and M&M requires that the agreement be "governed by and construed in accordance with the laws of New York;" it is silent as to the law that governs enforcement.  Himes Decl., Ex. 3 ("Contract"), at 3.  Accordingly, precedent interpreting the FAA will apply to M&M's arguments that the Court lacks subject matter jurisdiction and that Chalpin's Petition is time-barred.  *See* Respondent Mem., Dkt. 30, at 3–7.

In light of the Contract's choice-of-law provision, the parties' stipulation that New York law applied to the arbitration, their agreement that New York law governs the substantive issues in this case, s*ee* Petition ¶ 26; Respondent Mem. at 13, 13 n.21, and the Court's obligation to apply the law of the forum state, *see Coassin*, 884 F.3d at 134, M&M's argument that Chalpin's Petition is barred by the doctrine of res judicata is governed by New York law.  *See Isaly v. Bos. Globe Media Partners, LLC*, 650 F. Supp. 3d 106, 117–18 (S.D.N.Y. 2023), *aff'd*, No. 23-67-CV, 2023 WL 6439901 (2d Cir. Oct. 3, 2023).

4

## II.   The Court Has Subject Matter Jurisdiction

Because "jurisdictional questions ordinarily must precede merits determinations," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), the Court first addresses M&M's claim that the Court lacks subject matter jurisdiction.  M&M argues that Chalpin's failure to timely serve the Petition under the FAA deprives this Court of subject matter jurisdiction, Respondent Mem. at 4–6, and that the South Carolina state court retained exclusive jurisdiction over actions to confirm or vacate the arbitration award, *see id.* at 6–7.

M&M's argument that failure to timely serve the Petition deprives the Court of subject matter jurisdiction is without merit.  "Most time bars are nonjurisdictional;" in the absence of a "clear statement" from Congress to the contrary, courts should treat a statute of limitations as nonjurisdictional.  *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 107 (2d Cir. 2018) (quoting *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013)).  None of the relevant provisions of the FAA mentions jurisdiction, much less contains a clear Congressional statement that its service requirements are jurisdictional.  Chalpin brought this action pursuant to § 10 of the FAA, 9 U.S.C. § 10, which does not confer subject matter jurisdiction.  *See Badgerow*, 596 U.S. at 4; *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Loc. 261*, 912 F.2d 608, 611 (2d Cir. 1990).  The plain text of § 12, which governs service of a petition to vacate an arbitration award, also does not suggest that timely service is required for a court to have jurisdiction.  *See* 9 U.S.C. § 12.  In the absence of any statement from Congress, let alone a clear statement, that the requirement to serve a petition to vacate an arbitration award within three months of the award is jurisdictional, the Court treats the requirement as nonjurisdictional.

M&M's alternative argument that the South Carolina state court retained exclusive jurisdiction over any action to vacate the arbitration award is not persuasive. Its reliance on *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024), is misplaced. In *Smith*, the Supreme Court held that, when a federal court determines that a dispute is subject to arbitration and a party requests a stay of the proceeding pending arbitration, the court does not have discretion to dismiss the suit even if all of the claims are subject to arbitration; rather, § 3 of the FAA requires the court to stay the proceeding pending arbitration. *Id.* at 475–78. In reaching that decision, the Court reasoned that § 3 ensures that parties can return to federal court if arbitration fails, and if a court were permitted to dismiss an action rather than stay it, that "return ticket" might no longer be available. *Id.* at 477. The Court noted that, although a party could file a new suit in federal court in such circumstances, requiring a party to file a new suit both ignores the plain text of § 3 and could pose a potential statute-of-limitations problem. *Id.* at 477 n.3. Put differently, *Smith* stands for the proposition that if a court were to dismiss an action after it compels arbitration, it would ignore the plain text of § 3 and defeat the FAA's promise of a district court to which the parties can return after arbitration. *Id.* at 477.

It does not follow from *Smith* that the court that refers the parties to arbitration under § 3 is the *only* court in which the parties may challenge or confirm the arbitration award; indeed, the Court in *Smith* explicitly noted that a party could "as a practical matter" file a new suit in federal court. *Id.* at 477 n.3. Nothing in the text of § 3 supports M&M's interpretation that the referring court retains exclusive jurisdiction over the case. Moreover, such an interpretation would run counter to § 10, which permits "the United States court in and for the district wherein the award was made [to] make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10(a).

6

In short, this Court has jurisdiction to adjudicate the Petition. *See* Petition ¶¶ 15–18; Petitioner Mem., Dkt. 4, at 3–6.

## III.    Res Judicata Bars Chalpin's Petition

Res judicata, also known as claim preclusion, precludes a party from litigating "a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *Josey v. Goord*, 9 N.Y.3d 386, 389 (2007) (citation omitted).[3]  The doctrine "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." *In re Hunter*, 4 N.Y.3d 260, 269 (2005).  In order to "ensure finality, prevent vexatious litigation and promote judicial economy," New York courts have long applied a "transactional analysis approach" to determine whether res judicata bars a party's claim: "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021) (cleaned up).  To determine whether two claims arise from the same transaction or series of transactions courts consider: (1) whether the claims turn on facts "related in time, space, origin, or motivation;" (2) whether the claims "form a convenient trial unit;" and (3) whether the treatment of the claims "as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (citation omitted).

### A.  The Stipulation Acts as a Judgment on the Merits

Under New York law, a "stipulation of discontinuance with prejudice has the same preclusive effect as a judgment on the merits;" when dismissal is voluntary, courts narrowly interpret the "with prejudice" language "when the interests of justice or the particular equities

---

[3]        This action and the South Carolina Action involve both Chalpin and M&M.

involved warrant such an approach." *Busher v. Barry*, 223 A.D.3d 778, 780 (2d Dep't 2024)
(citation omitted); *see also Guide New York City Inc. v. Pearlbud Realty Corp.*, 226 A.D.3d 517,
517–18 (1st Dep't 2024) (stipulation of discontinuance with prejudice acts as judgment on the
merits when plaintiff does not reserve the right to pursue related claims or limit the claims
dismissed); *Martinez v. JRL Food Corp.*, 194 A.D.3d 488, 488–89 (1st Dep't 2021) (no
preclusive effect because party discontinued actions alleging the wrong address at which the
claimed negligence occurred); *Karniol v. Good Move Trucking, Inc.*, 281 A.D.2d 287, 287 (1st
Dep't 2001) (no preclusive effect when statements at conference indicated that discontinuance
was based on failure to meet monetary threshold and plaintiff planned to re-file in state court);
*Klein v. Gutman*, 121 A.D.3d 859, 861–62 (2d Dep't 2014) (voluntary dismissal in federal court
not given preclusive effect in state court action where party seeking preclusion continued to
litigate state court action); *Van Hof v. Town of Warwick*, 249 A.D.2d 382, 382–83 (2d Dep't 1998)
(voluntary dismissal in response to Rule 11 motion asserting that federal civil rights claims were
baseless not given preclusive effect over state law claims asserted by plaintiff in both federal and
state proceedings).

     The Stipulation operates as a judgment on the merits of the claims Chalpin asserted in the
South Carolina Action against M&M.  Chalpin stipulated and agreed "to dismiss all claims
against" M&M "with prejudice."  Stipulation.  There is no indication that Chalpin's agreement to
dismiss the action was anything but voluntary; it had the benefit of counsel in negotiating the
Stipulation.  *See* Himes Reply Decl., Dkt. 34, ¶¶ 5–16.  Thus, under applicable New York
precedent, the Stipulation has the same preclusive effect as a judgment on the merits, unless "the
interests of justice or the particular equities involved warrant" a narrow interpretation of "with
prejudice."  *Busher*, 223 A.D.3d at 780.  Chalpin has identified no such equities.  Interpreting the

8

facts in the light most favorable to Chalpin, on March 6, 2024, it told M&M that it was studying the arbitration award and "evaluating grounds for seeking to vacate the Award" in a New York proceeding. Himes Reply Decl. ¶ 9. Evaluating whether to file a vacatur action does not evince an affirmative determination that Chalpin planned to seek vacatur. *Cf. Karniol*, 281 A.D.2d at 287 (no claim preclusive effect where plaintiff stated at a conference that he would initiate a state court action following dismissal with prejudice of identical federal action). In the absence of any equities suggesting the "with prejudice" aspect of the Stipulation should be read narrowly, the Stipulation has the same preclusive effect on Chalpin's claims in the South Carolina Action as a judgment on the merits would have.

### B. Chalpin's Petition Arises from the Same Transaction as the South Carolina Action

Chalpin's Petition arises from the same transaction as the South Carolina Action. It matters not that Chalpin brought this action as a petition to vacate an arbitration award rather than as an affirmative lawsuit against M&M. Res judicata bars a subsequent action arising out of the same transaction, "even if based upon a different theory involving materially different elements of proof." *Mazzurco v. Astoria Fed. Sav. & Loan Ass'n*, 157 A.D.3d 943, 944 (2d Dep't 2018); *see also Robinson v. 1528 White Plains Rd. Realty, Inc.*, 137 A.D.3d 426, 427 (1st Dep't 2016). Chalpin's claim here arises from the same transaction as the South Carolina Action — the purchase of real property in South Carolina as part of a like-kind transaction — and is premised on the same legal theory: M&M allegedly breached its fiduciary duty by serving as an undisclosed dual agent for the Seller and Chalpin. *Compare* Petition ¶¶ 1, 5, 43; Himes Decl. ¶¶ 11–26; and Petitioner Mem. at 6–20; *with* South Carolina Compl. ¶¶ 60–116, 158–62, 180(c)-(f),

9

199, 202–15.[4]  Determining whether the arbitrator manifestly disregarded New York dual agency law as it applied to the sale of the South Carolina property necessarily turns on the same facts as those underlying the South Carolina Action, *see Simmons*, 37 N.Y.3d at 111; namely, whether M&M disclosed its relationship with the Seller to Chalpin, and whether such disclosure satisfied its obligations as a fiduciary to Chalpin.

Furthermore, Chalpin's claims here and in the South Carolina Action form a convenient trial unit.  *See id.*  Where the purpose behind two claims, the type of relief sought, and the type of proof required are the same, those claims form a convenient trial unit.  *See Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 101 (2005).  Chalpin effectively seeks the same relief here as it could have sought in the South Carolina Action.  Chalpin asks the Court to vacate the portion of the arbitration award that dismissed its breach of fiduciary duty claim against M&M.  Petition at p. 14.  Chalpin also asks the Court to remand this matter to the arbitrator with instructions either to (1) enter an award finding M&M liable for breaching its fiduciary duty; or (2) apply Chalpin's preferred interpretation of New York dual agency law and issue new findings of fact and conclusions of law.  *Id.*  Chalpin seeks damages for M&M's alleged breach of fiduciary duty, which was the gravamen of Chalpin's Complaint and the very relief it sought in the South Carolina Action as it pertained to M&M.  Additionally, Chalpin could have, but chose not to,

---

[4]      Chalpin raises an argument in passing that the arbitrator was partial towards M&M.  *See* Petitioner Mem. at 21–23; Himes Decl. ¶¶ 28–35.  Chalpin asserts that the arbitrator had ruled in M&M's favor on four previous occasions.  Petitioner Mem. at 21–22.  It is entirely conclusory to suggest that the arbitrator was not impartial simply because he ruled in M&M's favor in the past; "an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side," and such a conclusion can be inferred "from objective facts inconsistent with impartiality."  *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (citations omitted).  The only other circumstance Chalpin alleges demonstrates partiality is not an objective fact but is instead duplicative of its precluded claim: that the arbitrator "plainly ignored controlling law on dual agency to reach a determination favorable to M&M." Petitioner Mem. at 22.

challenge in the South Carolina Action the arbitration award on the basis of manifest disregard of the law. It chose, instead, to voluntarily dismiss that action with prejudice.

Chalpin relies on *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332 (4th Cir. 2002), and *Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000). Neither case applies New York law nor involves claim preclusion. In *Vulcan*, a plaintiff brought suit in California state court, which subsequently granted the defendants' motion to compel arbitration pursuant to the California Arbitration Act and stayed the court proceeding. 297 F.3d at 336. The arbitrator awarded the plaintiff damages; within two days of the award, the defendants filed an action to vacate the arbitration award in a federal court in Virginia. *Id.* at 336–37. The plaintiff subsequently moved in the California state court to confirm the arbitration award. *Id.* at 337. The parties cross-moved in each action. *Id.* The state court ruled first and confirmed the arbitration award; the federal court, disregarding the state court decision, vacated the arbitration award. *Id.* The Fourth Circuit declined to adopt the plaintiff's argument that the district court action was part of the original action in state court, reasoning that a § 10 "action is independent of any action that may have been filed to compel arbitration." *Id.* at 338. The Fourth Circuit decided, however, that the district court should have abstained; it did not opine on the claim-preclusive effect of the state court judgment. *Id.* at 335.[5] This is an entirely different case. Chalpin dismissed the South Carolina Action with prejudice before ever instituting § 10 proceedings in this Court.

Chalpin relies on *Green* for the proposition that "dismissal with prejudice of a plaintiff's . . . claims has no effect upon a subsequent challenge to an arbitrator's ruling, which is an

---

[5] In *dicta*, the Fourth Circuit observed that through enforcing various doctrines, including res judicata, full faith and credit, and *Erie*, "the federal-state system of courts seeks, in a cooperative effort, to give one fair trial on a given dispute, to respect each other, and thus to administer justice efficiently." *Vulcan*, 297 F.3d at 343. Those same principles underlie the Court's respect for the dismissal with prejudice in the South Carolina Action.

entirely separate action." 200 F.3d at 973. The Sixth Circuit in *Green* was deciding whether the district court had subject matter jurisdiction, in the context of it having dismissed the action with prejudice when it granted a motion to compel arbitration. *Id.* at 972–73. As discussed in Section II *supra*, the Supreme Court abrogated that very practice in *Smith*, 601 U.S. at 475–78, because it both ran counter to the plain text of § 3, and, in practice, could leave a party with no court to which to return following an arbitration.[6] Furthermore, Chalpin voluntarily dismissed the South Carolina Action with prejudice well *after* that court granted M&M's motion to compel arbitration and after the arbitrator issued the award in M&M's favor.

In sum, the Stipulation was a final judgment on the merits of the claims Chalpin asserted against M&M in the South Carolina Action. Those claims arose from the same real estate transaction that was at issue in the arbitration and raised the same legal theory that Chalpin now requests the Court to reexamine. Accordingly, res judicata bars Chalpin's Petition.

## IV.    Chalpin Failed to Timely Serve the Petition on M&M

Even if the claim were not barred by res judicata, Chalpin failed to timely serve the Petition as required under § 12 of the FAA. Section 12 provides that notice of a motion to vacate an arbitration award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. There is no dispute that Chalpin served M&M on June 10, 2024, six days after the deadline established by § 12. *See* Dkt. 7. Chalpin, however, argues that the Court should excuse its untimely service.

Although several other Circuits have held that the three-month deadline in § 12 is subject to equitable exceptions, *see, e.g.*, *NuVasive, Inc. v. Absolute Med., LLC*, 71 F.4th 861, 872–75

---

[6]    *Smith* also abrogated *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992), on which the Sixth Circuit relied. *See Green*, 200 F.3d at 973.

(11th Cir. 2023); *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1156–58 (9th Cir.

2016), the Second Circuit has not squarely addressed the issue.  The Second Circuit has observed

that, because § 12 does not mention an exception to the three-month limitations period, and an

"action to enforce an arbitration award is a creature of statute," "there is no common law

exception"; "a party may not raise a motion to vacate, modify, or correct an arbitration award

after the three month period has run, even when raised as a defense to a motion to confirm."

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984).  Notwithstanding that broad

statement, the Circuit has more recently signaled that equitable exceptions to § 12 may exist.  In

*Dalla-Longa v. Magnetar Capital LLC*, the Circuit declined to decide whether "equitable

exceptions to the rule of strict compliance with § 12's three-month deadline" could ever apply

because the appellant had not shown any equitable basis on which his failure to timely serve his

petition could be excused.  33 F.4th 693, 697–98 (2d Cir. 2022).

The reasoning applied by the Circuit in *Dalla-Longa* applies with equal force here.

Chalpin has not demonstrated any reason why, in equity, its late service of the Petition should be

excused.  Equitable tolling is applied "as a matter of fairness" where a party is "prevented in

some extraordinary way from exercising [its] rights."  *Pearl v. City of Long Beach*, 296 F.3d 76,

85 (2d Cir. 2002) (citation omitted).  "Generally, a litigant seeking equitable tolling bears the

burden of establishing two elements: (1) that [it] has been pursuing [its] rights diligently, and (2)

that some extraordinary circumstance stood in [its] way."  *Clark v. Hanley*, 89 F.4th 78, 92 (2d

Cir. 2023) (citation omitted).

The deadline to serve the Petition was June 4, 2024.  Chalpin contacted M&M's Florida-

based arbitration counsel on May 28, 2024, to inquire whether he was authorized to accept

service.  Himes Reply Decl. ¶¶ 8, 17; *id.*, Ex. A, at 4–5.  Counsel indicated he needed to speak to

13

his client. Himes Reply Decl. ¶ 18. Chalpin filed the Petition the following day, May 29, 2024.
*See* Dkt. 1. On Friday, May 31, M&M's counsel reported that he would have an answer
regarding acceptance of service on Monday, June 3. Himes Reply Decl., Ex. A, at 3–4. At the
behest of no one, Chalpin stated that it would wait to hear from M&M's attorney before
commencing service. *Id.* at 3. On June 3, M&M's counsel reported that he was not authorized to
accept service of the Petition. *Id.* at 2. That day, Chalpin hired a process server to serve the
Petition; service was effected a week later on June 10. Himes Reply Decl. ¶ 25; Dkt. 7.

Nothing prevented Chalpin from serving M&M before the June 4 deadline, let alone
anything that could be called an "extraordinary circumstance." *Clark*, 89 F.4th at 92 (citation
omitted). As early as May 31, 2023, Chalpin knew the address of M&M's New York office. *See*
Himes Decl., Ex. 1, at 6, 40. Chalpin could have served the Petition on M&M through any
number of means on May 29, 2024, when it initiated this action. Running up against a tight
deadline, Chalpin instead chose to wait five days before hiring a process server to effect service,
and then the process server took another week to actually accomplish service on a known
address. Nothing in its supporting Declaration or the email chain between Chalpin's counsel and
M&M's counsel suggest that M&M prevented service or that its counsel ever even implied that
his client would consent to him accepting service. *See* Himes Reply Decl. ¶¶ 17–26; *id.*, Ex. A.

Because the Court finds no circumstances prevented Chalpin from timely serving M&M,
it need not reach the question of whether such circumstances could excuse late service under §
12. Chalpin failed to timely serve the Petition under § 12, and the Petition must be dismissed.[7]

---

[7]    Chalpin's argument that M&M waived objection to untimely service is unavailing. M&M waived "any
defenses based on lack of personal jurisdiction" but "expressly reserved" all other defenses. *See* Stipulation and
Order, Dkt. 11, at 1. Construing all facts in its favor, Chalpin's description of the drafting of the Stipulation and
Order does not suggest that M&M waived its objection to Chalpin's late service; at best, the parties appeared

## CONCLUSION

For the foregoing reasons, M&M's cross-motion to dismiss the Petition is GRANTED.
The Court need not reach the other grounds M&M proffers for dismissal.  Because the Court has
granted M&M's motion to dismiss, it will not reach the merits of Chalpin's Petition.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 3 and
30 and close this case.

**SO ORDERED.**

**Date:  February 24, 2025**
**New York, New York**

                                                    **VALERIE CAPRONI**
                             **United States District Judge**

---

concerned with the method of service and who accepted service on M&M's behalf.  *See* Himes Reply Decl. ¶¶ 27–
36; *id.*; Ex. B.

15